Walter JACONSKI, Appellant,

v.

AVISUN CORPORATION and W. V. Pangborne & Co., Inc.

No. 15420.

United States Court of Appeals
Third Circuit.

Argued Jan. 3, 1966.

Decided April 13, 1966.

Avram G. Adler, Abraham E. Freedman, Freedman, Borowsky & Lorry, Philadelphia, Pa., for appellant.

John Francis Gough, Thomas Raeburn White, Jr., White & Williams, Philadelphia, Pa., for appellee, W. V. Pangborne & Co., Inc.

Martin A. Heckscher, James J. McCabe, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., for appellee, Avisun Corp.

Before BIGGS, GANEY and FREEDMAN, Circuit Judges.

BIGGS, Circuit Judge.

This appeal is taken from a pretrial order entered by the court below dismissing the plaintiff's, Jaconski's, case, based on diversity and jurisdictional amount for "lack of jurisdiction." [1]

The operative facts as they appear from the record follow. On January 23, 1962, Jaconski brought suit to recover damages for personal injuries allegedly sustained by him on the afternoon of August 1, 1961, while he was employed as a pipefitter and welder for Bechtel Corporation.[2] Bechtel was the general contractor in connection with the erection of a polypropylene manufacturing plant for the defendant, Avisun Corporation, Avisun. At the time of the accident the defendant, W. V. Pangborne & Co., Inc., Pangborne, was engaged in electrical-installation work at Avisun's plant under a subcontract from Bechtel. At the time of the accident Jaconski was assisting in the construction of a gas line on a "pipe bridge." [3] When Jaconski attempted to get a length of pipe into place it came into contact with an overhead wire. This contact caused 12,000 volts of electricity to run through the pipe and into and through the body of the plaintiff, throwing him some ten feet.

In March 1962 Avisun and Pangborne served separate but similar interrogatories requiring Jaconski to furnish information regarding the nature and extent of his injuries. On July 26, 1962, Jaconski filed answers to Pangborne's

---

1. The grounds for dismissal are not set out specifically in the pretrial order of dismissal which reads as follows: "And now, this 8th day of April, 1965, this case is dismissed for lack of jurisdiction." There is, however, no question of diversity of citizenship since the complaint and answer reveal that the plaintiff is a citizen of New Jersey and the defendant, Avisun Corp., is incorporated under the laws of Delaware and has its principal place of business in Philadelphia, Pennsylvania and the defendant, W. V. Pangborne & Co., Inc., is incorporated under the laws of Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania.

2. Bechtel Corporation is not a party to the present litigation.

3. The practice in laying the gas line required Jaconski to stand on the "pipe bridge" while his working partner handed up 20-foot lengths of pipe to him. As soon as a pipe length was in place Jaconski's partner would come on the "pipe bridge" and assist him in welding the pipe into place.

interrogatories only, which stated that as a result of the accident he had suffered severe electrical burns on both his hands and feet, aggravation of a prior injury to his left foot, and severe shock to his nervous system with residual anxiety neuroses. He also stated that he still suffered "from residual muscle and tendon damage to right hand and increasing difficulty with left foot." The extent of Jaconski's alleged injuries is set out more fully in his deposition taken on April 11, 1963. This deposition, however, was not filed in the court below until after the pretrial order dismissing the case was filed and was not considered by the court below. The use of this deposition will be discussed at a later point in this opinion. Jaconski's answers to the interrogatories further alleged only $400 in special damages.[4]

On December 28, 1964 the plaintiff's pretrial memorandum, then filed, alleged a permanent partial disability and listed as special damages in the amount of $58,-500, for loss of past earnings and estimated loss of future earnings, and $200, for medical bills. Avisun, on March 1, 1965, filed a motion to compel the plaintiff to furnish to it up-to-date information regarding the claimed injuries. At a hearing held on March 17, 1965, the plaintiff's attorney agreed to furnish such information before the pretrial conference or be barred from showing additional damages at the trial.[5] No further answers to the interrogatories were filed and, aside from Jaconski's deposition, no further information as to his injuries has been furnished by Jaconski.

Avisun's answer and the pretrial memoranda of both Pangborne and Avisun raised the defense of lack of necessary amount in controversy. 28 U.S.C. § 1332(a). On April 8, 1965, the pretrial conference was held, but no stenographic

---

4. Jaconski's answers to the interrogatories state: (1) that he was treated at the Delaware Hospital, Wilmington, on the afternoon of the accident but that he was not hospitalized at any other time; (2) that he reported to work the morning after the accident and lost no wages while finishing his job with Bechtel; (3) that during the eleven months after the accident he worked for five separate employers and claimed only the loss of one week's wages in the amount of $168 in November, 1961, and (4) that his total out-of-pocket expenses totalled less than $400, including approximately $200 in medical expenses.

5. The following colloquy took place between counsel in the presence of the court: "Mr. Heckscher (counsel for Avisun): The other motion [by Avisun] is to compel the filing of either answers to our [Avisun's] interrogatories which have never been filed or up-to-date answers to Pangborne's interrogatories which stated that they [the interrogatories] were continuing and inasmuch as this case is about to reach pretrial conference we felt that we should have up-to-date information.

"Mr. Adler (counsel for Jaconski): Your Honor when they furnished their interrogatories I submitted the answers to Pangborne which were almost identical interrogatories, sworn to and—

"Mr. Heckscher: No question about that, we don't care which interrogatories are up to date, but the pretrial memorandum has alleged damages which did not appear to be supported by the previous answers filed, and we would like up-to-date, whether they are our interrogatories that are answered or whether up-to-date information is supplied in answer to Pangborne's interrogatories.

"The Court: Well, at the time of the pretrial conference it will be up to the parties concerned to have their interrogatories up to date. If not up to date at the time of the pretrial conference plaintiff will be limited—

"Mr. Adler: That's right.

"The Court: —and you won't be able to prove it.

"Mr. Adler: That's my responsibility and I accept that responsibility.

"The Court: I don't think you need more than that.

"Mr. Heckscher: Thank you, Your Honor.

"The Court: So that the second order in the petition [sic.] will not be signed.

"Mr. Heckscher: Nor need it be listed as I understand it from what Your Honor has said.

"The Court: No, because the responsibility is on plaintiff's attorney to amend if he chooses to go forward on some phase of damages that are not in the original pretrial memorandum."

The second order requested by Avisun's motion, referred to by the court below as a "petition" is not relevant here.

report was made of the proceedings and it appears that none is available. At the close of the conference the order dismissing the action for lack of jurisdiction was entered.

The problem of ascertaining the "sum or value" of the matter in controversy in a suit based on diversity jurisdiction has puzzled the courts for many years.[6] The problem arises, of course, from the fact that lower federal courts possess only that jurisdiction which has been specifically conferred upon them by Congress. United States Constitution, Art. III; Sheldon v. Sill, 8 How. 440, 49 U.S. 440, 12 L.Ed. 1147 (1850). In order to comply with the Federal Rules of Civil Procedure in respect to jurisdictional amount all that is necessary is that the complaint contain "a short and plain statement of the grounds upon which the court's jurisdiction depends * * *." Rule 8(a)(1), Fed.R.Civ.Proc., 28 U.S.C.

An uncontroverted allegation that the requisite jurisdictional amount exists is deemed sufficient ordinarily to comply with Rule 8(a)(1). See 2 Moore, Federal Practice § 8.11 at 1666 (2d ed. 1965). However, where the amount in controversy is challenged, the burden of proving the matter in controversy exceeds the jurisdictional minimum rests upon the party alleging the sufficiency of the amount in controversy. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189–190, 56 S.Ct. 780, 80 L.Ed. 1135 (1936); Wade v. Rogala, 270 F.2d 280, 284 (3 Cir. 1959). Moreover, in McNutt the Supreme Court stated that even if the jurisdictional amount is not challenged by an adversary "the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a pre-

ponderance of evidence." See 298 U.S. at 189, 56 S.Ct. at 785.

There is small difficulty in applying this rule when the damages claimed are liquidated, but when the damages are unliquidated, as in the instant case, there is no exact yardstick to measure recovery even when most, if not all the operative facts are known. One of the tools developed for determining the intangible factors relating to the amount in controversy is the requirement that a plaintiff must claim the necessary amount in "good faith". Norwood Lumber Corporation v. McKean, 153 F.2d 753 (3 Cir. 1946).

On its face, the phrase "good faith" would seem to imply that the relevant consideration is the plaintiff's state of mind and that, therefore, it is a subjective test. In fact one of the expressions of the rule, whether the demand is colorable and laid for the purpose of giving jurisdiction to the federal court, would suggest this conclusion. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938); Barry v. Edmunds, 116 U.S. 550, 561, 6 S.Ct. 501, 29 L.Ed. 729 (1886). But it is obvious that the plaintiff's actual mental state can never be satisfactorily measured without recourse to objective facts. Thus the basic criterion for determining "good faith" is that "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 288–289, 58 S.Ct. 590 (1938). See also Horton v. Liberty Mutual Insurance Co., 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961); Brough v. Strathmann Supply Co., Inc., 358 F.2d 374 (3 Cir. 1966). The test then is not what amount the plaintiff claims in the *ad damnum* clause of his complaint, but rather, whether it appears to a "legal certainty" that he cannot re-

---

6. The first Act limiting federal jurisdiction required a $500 minimum amount in controversy. Act of Sept. 24, 1789, ch. 20, § 11, 1 Stat. 78. Since 1789, Congress has increased this amount three times. Act of March 3, 1887, 24 Stat. 552 ($2,000); Act of March 3, 1911, ch. 231, § 24, 36 Stat. 1091 ($3,000); and Act of July 25, 1958, 72 Stat. 415 (now 28 U.S.C. §§ 1331, 1332) ($10,000).

cover an amount above the jurisdictional minimum. Cumberland v. Household Research Corp. of America, 145 F.Supp. 782 (D.Mass.1956); Cohen v. Proctor & Gamble Distributing Co., 16 F.R.D. 128 (D.Del.1954). It follows, therefore, that in order to find a plaintiff's claim lacking in "good faith", the court must be able to conclude from the record before him that the plaintiff cannot recover a sum by way of damages above the $10,000 jurisdictional floor.

■ We entertain no doubt that a trial judge has the power to determine whether the facts requisite to jurisdiction exist. Wetmore v. Rymer, 169 U.S. 115, 18 S.Ct. 293, 42 L.Ed. 682 (1898). However, the determination of jurisdictional issues must always be such as to enable a reviewing court to ascertain whether the evidence supports the trial court's finding. Id. at 121–122, 18 S.Ct. 293; Shaffer v. Coty, Inc., 183 F.Supp. 662, 665 (S.D.Cal.1960).

The record before us is meager, and the court below did not state the basis for its conclusion that the jurisdictional amount does not exist. Moreover, our review of the record does not permit us to conclude that it is apparent to a "legal certainty" that Jaconski could not recover sufficient damages to constitute the requisite amount.

■ We are not unmindful of the mounting caseloads in our heavily burdened metropolitan courts and of the very substantial number of cases awaiting trial. In fact the attempt to limit these burgeoning caseloads was one of the major reasons for increasing the jurisdictional amount. S.Rep. 1830, U.S.Code Cong. and Admin.News, 85th Cong.2d Sess. pp. 3099, 3101 (1958). But despite that increase in the jurisdictional amount

the statistics published by the Director of the Administrative Office of the United States Courts show that no reduction in private civil litigation, including tort cases, has been effected.[7] It has been contended that the reason for this unfortunate result is the inflexibility of the applicable "good faith-legal certainty" test. But Congress was aware of this test and had been advised that an increase in the jurisdictional amount would undoubtedly be followed by an increase in the damages claimed in tort cases.[8] Congress was surely aware of this difficulty and intended to afford some degree of relief therefrom by enacting Section 1332(b), Title 28, U.S.C. This provision states that when a plaintiff is adjudged to be entitled to less than the jurisdictional amount the court may deny him costs and, in addition, may impose costs on him. Congress "aimed" Section 1332(b) "at deterring the filing of inflated claims made in order to bring the actions in the district courts."[9] Section 1332(b) has not reduced the number of inflated claims, perhaps because it has not been often applied, but because Congress did enact this section it would seem to follow that it did not attempt to change the "good faith-legal certainty" test. It remains the rule, and the reason for its rather strict application resides, we believe, in the fear of depriving a plaintiff of his right to a jury trial.[10] Except in the plainest cases the issue of jurisdictional amount should not be decided if the ruling constitutes at the same time a decision on the merits. Ordinarily the desirable, indeed the necessary, choice is to permit the case to proceed to trial. Cf. Wade v. Rogala, supra. The grounds for the trial court's decision in the instant case are far from plain. Can it be said that in the case at

7. See the statistics cited in Arnold v. Troccoli, 344 F.2d 842, 844–845 (2 Cir. 1965) and the Annual Reports of the Director of the Administrative Office of the United States Courts for the fiscal years 1957–64, Table C 2.

8. See Report of Committee on Jurisdiction and Venue of the Judicial Conference of

the United States, U.S.Code Cong. and Admin.News, 8th Cong.2d Sess. 3114, 3123 (1958).

9. S.Rep. 1830, U.S.Code Cong. and Admin. News, 85th Cong.2d Sess. pp. 3099–3100 (1958).

10. The plaintiff in the instant case demanded a jury trial in his complaint.

bar on the present record, prior to trial, that the jurisdictional amount is lacking? We are without a statement by the trial court as to the basis for a conclusion of law, in fact unstated by the trial court, that the plaintiff's allegations of jurisdictional amount were not made in "good faith".

We are dissatisfied with the record here. Counsel for Jaconski was lax. The judge presiding at the March 17th hearing, who was not the judge who presided at the actual pretrial hearing, pointed out to Jaconski's counsel clearly that it was his duty to bring up to date the operative facts relating to his client's damages. Jaconski's counsel replied: "That's my responsibility and I accept that responsibility." He failed in that clearly stated obligation. Jaconski's deposition was taken on April 11, 1963. The deposition was not filed until May 3, 1965, more than two years later. This was a long delay. May 3, 1965 was the day on which the notice of the appeal was filed. But the court below did not inform Jaconski's counsel that it would dismiss the action if information concerning the nature, character and extent of Jaconski's injuries were not brought up to date by the time of the pretrial conference on April 8, 1965, though Jaconski's counsel could, and perhaps should have drawn an inference that since the court was of the view that the

record as constituted then and now [11] would not sustain the allegation of the jurisdictional amount and that therefore the action might possibly be dismissed for lack of jurisdiction. The trial memoranda of Avisun and Pangborne made the jurisdictional amount an issue in the case. But Jaconski's counsel filed no answering memorandum so far as we are aware. On the other hand, neither Avisun nor Pangborne moved to dismiss the action for lack of jurisdiction. The court aparently entered the order of dismissal *sua sponte*. Perhaps the unrecorded proceedings at the pretrial conference would disclose an oral motion but without that record we are uninformed as to what transpired [12] and, as has been stated, we are entitled to know on what basis the court below dismissed the case. Cf. Arnold v. Troccoli, 344 F.2d 842 (2 Cir. 1965). The trial court must examine all available evidence. Gilbert v. David, 235 U.S. 561, 568, 35 S.Ct. 164, 59 L.Ed. 360 (1915). Cf. Sansone v. Ocean Accident and Guarantee Corp., 228 F.Supp. 554 (E.D.La. 1964). Moreover, we cannot conclude that the arguments of Avisun and Pangborne based on the failure of Jaconski to make use of Rule 75(n) is a factor requiring the determination of this case in their favor.[13] The use of Rule 75(n) is permissive, not mandatory. In the instant case we must deal with the jurisdictional facts as they are presently on

---

11. We cannot and do not consider the contents of Jaconski's deposition in connection with the issue *sub judice*. We can consider the record only as it existed at the time the court below made the order dismissing the action. Cf. Williams v. Murdoch, 330 F.2d 745 (3 Cir. 1964), note 3 cited to the text. See Dictograph Products Co. v. Sonotone Corporation, 231 F.2d 867 (2 Cir. 1956), appeal dismissed by stipulation, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956).

12. See Section 753(b), Title 28, U.S.C. The desirability of having a court reporter present at pretrial conferences and causing the reporter to record verbatim the proceedings is demonstrated by the instant case. In this connection compare United States v. Sigal, 341 F.2d 837 (3 Cir. 1965).

13. Rule 75(n), Fed.R.Civ.Proc., 28 U.S.C., provides: "Appeals When No Stenographic Report Was Made. In the event no stenographic report of the evidence or proceedings at a hearing or trial was made, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection, for use instead of a stenographic transcript. This statement shall be served on the appellee who may serve objections or propose amendments thereto within 10 days after service upon him. Thereupon the statement, with the objections or proposed amendments, shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the court in the record on appeal."

the record.[14] The court below on re-mand must seek to have counsel make available on the record, for the information of the reviewing tribunal, sufficient facts to determine the good faith of the allegations of the complaint. Another pretrial conference should be held and pretrial to be effective must be full and adequate.

 If it were not for the unusual procedural difficulties presented by this case we would deem it unnecessary to comment further. We point out, however, that the court below on remand should determine the issue as to whether or not Jaconski's attorney's failure to update the answers to the interrogatories or otherwise to bring up to date on this record the operative facts as to the extent of Jaconski's injuries should limit Jaconski's proof as to the extent of those injuries.[15] See 4 Moore Fed.Practice ¶ 33.28, at 2340–41 (2d ed. 1963); Michigan Window Cleaning Co. v. Martino, 173 F.2d 466 (6 Cir. 1949); Fisher v. Underwriters at Lloyd's London, 115 F.2d 641 (7 Cir. 1940). Cf. United States v. 42 Jars, More or Less, 264 F.2d 666 (3 Cir. 1959). Cf. Rules 33 and 37, Fed.R.Civ. Proc., 28 U.S.C. If such a limitation be imposed by the trial judge it will not affect the necessity of making a determination of the jurisdictional amount in controversy which is to be ascertained, not by the amount which Jaconski is able to prove, but by the amount demanded by him, if that demand is found to have been made in good faith. Miller-Crenshaw Co. v. Colorado Mill & Elevator Co., 84 F.2d 930, 932 (8 Cir. 1936); National Surety Corporation v. City of Excelsior Springs, 123 F.2d 573, 156 A.L.R. 422 (8 Cir. 1941).

The order of the court below will be vacated and the cause will be remanded with instructions to proceed in accordance with this opinion.

---

14. Avisun and Pangborne cite two cases in support of their position. The first case, Murphy v. St. Paul Fire and Marine Insurance Company, 314 F.2d 30 (5 Cir. 1963), the recording discs of the court reporter had melted. It was impossible, therefore, for the Court of Appeals to pass on an alleged error in the trial judge's charge on the doctrine of *res ipsa loquitur*. In the second case, Kayo

Oil Company v. Sammons, 321 F.2d 729 (5 Cir. 1963), the alleged error concerned prejudicial statements allegedly made in the closing argument to the jury which were not recorded. It is obvious that if an error had occurred in either of the cited cases it would appear in a record prepared under Rule 75(n).

15. See note 5, supra.