FIRST AMERICAN FIRST, INC., and Gilbert R. Leake, III, Appellants,

v.

NATIONAL ASSOCIATION OF BANK WOMEN, and Sharon K. Bennett, Appellees.

No. 85–2138.

United States Court of Appeals, Fourth Circuit.

Argued May 6, 1986.

Decided Oct. 10, 1986.

Jonathan Mook (Bernard J. DiMuro, Hirschkop & Associates, P.C., Alexandria, Va., on brief), for appellants.

David P. Sanders (Thomas J. McCarthy, Jenner & Block, Chicago, Ill., Wiley R. Wright, Jr., Susan M. Cardenas, Thomas & Fiske, P.C., Alexandria, Va., on brief), for appellees.

Before WINTER, Chief Judge, and RUSSELL and PHILLIPS, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Plaintiffs First American First, Inc. (First American) and Gilbert Leake, III, appeal the district court's dismissal without prejudice, for lack of personal jurisdiction, of their claim based upon allegedly defamatory letters published by defendants, National Association of Bank Women (NABW) and Sharon Bennett. The court found that although the Virginia long-arm statute authorized the exercise of personal jurisdiction over NABW and Bennett, the exercise of jurisdiction in this case would violate the Due Process Clause. We agree that Virginia statutory law authorizes the exercise of personal jurisdiction over these defendants. We also conclude, however, that such an exercise of jurisdiction would comport as well with the requirements of due process. We therefore hold that personal jurisdiction may properly be exercised under the Virginia long-arm statute, and accordingly, we reverse and remand for further proceedings.

I

First American is a travel agency incorporated in Virginia with Leake as its managing director, vice-president, and sole shareholder. NABW, a 28,000 member national membership organization established as an Illinois non-profit corporation, was created to help foster career opportunities for women in banking and finance. NABW's sole office is in Chicago, and it maintains no office, telephone number or business facility of any kind in Virginia. Bennett, NABW's administrative director, is a Chicago resident who has visited Virginia only two times in the past decade.

NABW publishes and distributes to its members a variety of procedural manuals and informational journals. All of these materials are published in and distributed from Chicago. NABW also sells specialty items to its members. Virginia sales accounted for approximately $200–$300 of the $6,000 in gross sales for these items. In addition, NABW offers certain group health and life insurance benefits and group travel services to its members, including those in Virginia. Illinois providers offer all of these services. The various activities and programs sponsored by NABW are developed and implemented by national standing committees which operate out of Chicago.

NABW's members reside throughout the United States. Approximately 1,150 NABW members live in Virginia. NABW's contacts with Virginia do not differ from those with other states. NABW's income derives primarily from annual membership dues and a one-time initiation fee from new members. Three percent of the total fees were collected from Virginia members in 1984. Other limited income derives from national convention registration, though a convention has never been held in Virginia.

NABW members may also form local groups. These groups are separate and autonomous from NABW and maintain separate tax identification numbers and financial records. NABW does not exercise control over these groups except to provide a core set of bylaws guiding the organization and operation of the local groups. Leaders of the local groups in each state form a state council which oversees the operations of the group on a statewide level. The state councils are also separate legal entities from NABW. Though NABW exercises no control over the councils, it requires the groups to meet at least once a year in the state. NABW retains any sums in excess of the state council's expenses and subsidizes any losses incurred in the Council's meetings.

The incidents giving rise to this litigation began in 1982 when NABW contracted with an Illinois travel service to act as

NABW's official travel agent and to provide travel services for NABW members attending the 1984 NABW national convention. Shortly thereafter, First American contacted local NABW group leaders throughout the country to solicit travel package business from NABW members for the national convention. First American claimed that it could provide services at lower prices than those provided for by the Illinois service and that Bennett had given First American, through Leake, permission to solicit local NABW members and groups. Bennett denied that Leake ever sought or was granted such permission for First American.

After learning of First American's solicitation, Bennett wrote to NABW group leaders, including those in Virginia where First American conducted its primary business, in April 1984. She warned them that First American was not the official travel agent for the convention, that NABW had been unable to obtain any information about First American's business, and that First American had made certain untruthful and misleading statements in its solicitation letters. NABW later sent First American two letters demanding the cessation of its unauthorized solicitation of NABW members. These letters were all written in, and mailed from, Chicago.

First American then brought this diversity action seeking compensatory and punitive damages for business defamation and malicious interference with contractual relationships resulting from the defendants' allegedly libelous letters. In addition, Leake sought compensatory and punitive damages for slander, invasion of privacy, and intentional infliction of emotional distress arising out of the letters. The defendants moved for dismissal for lack of personal jurisdiction or, in the alternative, to transfer the case to federal court in Illinois. The district court granted the motion to dismiss for lack of personal jurisdiction. The court first found that because the writing and mailing of the letters occurred outside Virginia, § (A)(3) of Virginia's long-arm statute, Va.Code § 8.01–328.-1, et seq., (act or omission in this Commonwealth) did not confer personal jurisdiction over the defendants in Virginia.[1] The court then ruled, however, that NABW's "ongoing interactions" with Virginia amounted to a "persistent course of conduct" within the state sufficient to confer jurisdiction under § (A)(4) of the long-arm statute ("out-of-state act causing injury within"). Va.Code § 8.01–328.1(A)(4).

Though the district court thus found that the exercise of jurisdiction was authorized by the Virginia statute, the court then concluded that the exercise of personal jurisdiction over NABW violated due process. The court reasoned that NABW, as a foreign non-profit membership organization, had never purposefully availed itself of the benefits and protections of Virginia law and that NABW could not reasonably have anticipated being haled into court in Virginia in light of its "extremely attenuated" contacts with the state.[2]

This appeal followed.

## II

As indicated, the district court properly analyzed the challenge to jurisdiction by considering first, whether its exercise was

1. Because we uphold the exercise of jurisdiction under § (A)(4), we need not address First American's alternative contention on appeal that the district court erred in finding § (A)(3) not applicable.

2. The district court did not specifically and separately address the question of personal jurisdiction over Bennett. Because her contacts with Virginia were those that arose out of her employment at NABW, the jurisdictional contacts inquiry is generally comparable, and our conclusions apply to both defendants. In her affidavit, Bennett asserted that in her capacity as Administrative Director she "supervise[d] the day-to-day operations and affairs of NABW," and that she had held that position "at all times relevant to the matters raised in the complaint." This necessarily covered the period of NABW's proven "ongoing interactions" with Virginia as well as the time of the allegedly defamatory mailings, so that Bennett is chargeable individually with both, along with NABW for whom she concededly acted.

authorized by state law, then, having found statutory authorization, by considering whether the jurisdiction authorized comported with constitutional due process requirements, *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir.1985), and concluded that jurisdiction was authorized by statute, but that it was not permitted by the constitution. We agree with the first conclusion, but disagree with the second, and will discuss the two in turn.

### A

NABW challenges the district court's conclusion that the defendant's "ongoing interactions" with Virginia brought its conduct within the intended jurisdictional reach of Section (A)(4) of § 328.1 of Virginia's long-arm statute. That section provides that—

A. A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

. . . .

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

■ We agree that this section authorizes, by its terms, the exercise of jurisdiction over defendants on the claim here asserted.

The section has two requirements for the exercise of jurisdiction: (1) a tortious injury in Virginia caused by an out of state act or omission; and (2) a relationship between the defendant and the state which exists in any one of the three ways specified in subsection (4).

The writing and mailing of NABW's letters out of state and the resulting alleged libel and other injuries suffered within Virginia clearly meet the first requirement. *St. Clair v. Righter*, 250 F.Supp. 148 (W.D. Va.1966).

As to the second requirement, the district court assumed that NABW did not "regularly do[ ] or solicit[ ] business in Virginia" and did not "derive substantial revenue from goods used or consumed or services rendered," in the state. The court concluded, however, that NABW engaged in a "persistent course of conduct" in Virginia within the meaning of *Willis v. Semmes, Bowen & Semmes*, 441 F.Supp. 1235 (E.D.Va.1977). In *Willis*, the court defined a "persistent course of conduct" under § (A)(4) as requiring that "[a]t a minimum, the plaintiff must prove that the defendant maintained some sort of ongoing interactions with the forum state." 441 F.Supp. at 1242.

Here, the court found—and its basic fact findings are not challenged—that the NABW made bi-monthly mailings of the NABW journal and annual mailings of its national directory, and of "a call to convention" to its 1,150 Virginia members, and annually distributed operating manuals for state councils and local groups including those in Virginia. From this, the court concluded that these contacts constituted "ongoing interactions" with Virginia sufficient, when coupled with the alleged defamation originating outside but "causing tortious injury within," the state, to invoke § (A)(4)'s authorization for the exercise of personal jurisdiction.

As an alternative basis for affirming the jurisdictional dismissal, NABW challenges that conclusion on two principal bases, both of which we reject. NABW first contends that the Virginia legislature could not have intended so expansive a reach for its statute as that insured by the district court's interpretation. As NABW puts it, that interpretation would "subject every non-profit organization to personal jurisdiction based solely upon non-commercial communications" and, even more drastically, would "render every national membership organization in the United States subject to jurisdiction in Virginia and every other state which takes a similar unlimited view of its own long-arm statute."

We agree that if this were the court's interpretation, the legislature probably could not have intended it. But NABW flagrantly misstates both the district court's interpretation and its practical implications. Under the court's interpretation, this long-arm provision only reaches out-of-state non-profit organizations, like other entities, which have *both* engaged in a "persistent course of conduct," in the sense of "ongoing interactions" (possibly short of "doing business") with Virginia, *and* have committed a specific tortious act that causes injury *in* Virginia.

This obviously stops far short of the "unlimited" reach vaguely posited by NABW, which we agree could not have been intended. As properly read, we are satisfied that the district court's interpretation of the statute's intended reach is correct, and that the court's conclusion that it reached the defendants here on the basis of their proven "ongoing interaction" with the state in conjunction with their alleged "act" causing "tortious injury" in Virginia was without error. *See Veribanc,* 755 F.2d at 373–74.

NABW's further contention draws upon cases interpreting the special venue provisions of the Clayton Act, 15 U.S.C. § 22, relating to the "transacting business" test. NABW points out that decisions construing this standard have repeatedly emphasized that "a professional association does not 'transact business' in a judicial district merely because some of its members reside in the district and receive the association's publications there," *see, e.g., Golf City, Inc. v. Wilson Sporting Goods Co.,* 555 F.2d 426, 437–38 (5th Cir.1977). The contention is that the same principle should apply here to prevent finding for jurisdiction purposes "a persistent course of conduct" by NABW in Virginia "merely because some of its members reside [in Virginia] and receive its publication there."

This contention fails for two principal reasons. The question here is the intended and permissible reach under the due process clause of a state's jurisdictional statute, not the proper interpretation of a federal venue statute as controlled by the Commerce Clause. An interpretation of intended federal statutory reach for venue purposes obviously does not speak to the quite different question of intended and permissible constitutional reach of a state jurisdictional statute, even if the limiting language were the same. Here, the limiting language is not identical, and though the concepts of "transacting business" and "persistent course of conduct" obviously have a common core of meaning, they obviously may express different notions in the two contexts.

We therefore consider the federal venue decisions, if at all relevant, certainly not controlling on the problem of statutory construction and constitutional limitations before us.

### III

As indicated above, we disagree, however, with the district court's follow-up conclusion that the statute, as so interpreted, did not pass constitutional muster.

The constitutional constraints on the exercise of jurisdiction as found in the due process clauses are familiar, and we merely summarize the most relevant principles here as a basis for analysis. The basic principle is of course that the defendant must have "certain minimum contacts" with the forum state and that the exercise of jurisdiction over him "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The constitutional interest protected is the individual's liberty interest in not being bound *in personam* by judgments of a forum with which he lacks meaningful contacts, ties or relations. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 468, 105 S.Ct. 2174, 2180, 85 L.Ed.2d 528 (1985). These minimum contacts cannot have had their source in the "unilateral activity of those who claim some relationship with a nonresident defendant," *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), but must be found in conduct

of the defendant by which he "purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," *id.; see also Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183. The "purposeful availment" requirement guards against the possibility that a defendant will be haled into a forum solely as a result of "random, isolated, or fortuitous" contacts. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). What is sought is conduct by the defendant in relation to the forum state "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

 Critically, where jurisdiction is asserted in respect of a claim "arising out of or related to the defendant's contacts with the forum" (specific jurisdiction) the contacts required by due process to support jurisdiction need not rise to the level of the "systematic and continuous" contacts required to support an assertion of jurisdiction in respect of a claim that does not arise from or bear relation to the contacts (general jurisdiction). *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 nn. 8, 9, 104 S.Ct. 1868, 1872 nn. 8, 9, 80 L.Ed.2d 404 (1984). In a given case, therefore, contacts that would not constitutionally justify an exercise of general jurisdiction might support an exercise of specific jurisdiction. *See Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Wolf v. Richmond County Hospital Authority,* 745 F.2d 904, 909 (4th Cir. 1984). Indeed, where authorized by state law, a single contact by a nonresident defendant may, if sufficiently "purposeful" in

its aim at, and sufficiently egregious in its impact upon, a forum state's legitimate interests, support a constitutional exercise of specific jurisdiction in respect of a claim arising from that very contact. *See Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1172 (5th Cir.1985) (citing principal cases).

This important distinction between specific and general jurisdiction rests upon two simple and obvious points. First, that all other factors aside, a state obviously has a greater and more legitimate interest in providing a forum for claims based upon conduct causing harm within its borders than for those based on conduct unconnected throughout its course with the forum's territory. Second, that, in corollary, an out-of-state defendant should more reasonably expect to be haled into a foreign state's courts when his purposefully targeted conduct has caused harm within that state's borders than when the specific conduct upon which a claim against him is based is unrelated territorially to a state with which he is not in continuous and systematic general contact. As a general proposition, that is, it is more "fair" to exercise jurisdiction when there is a close "relationship among the defendant, the forum, and the litigation" than when there is no relation between forum and litigation. *See Helicopteros Nacionales,* 466 U.S. at 414, 104 S.Ct. at 1872 (citing *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977)).

 Within these principles, we conclude that jurisdiction over these defendants can be exercised constitutionally under the Virginia statute. The jurisdiction asserted is specific.[3] It is based upon a claim arising

---

**3.** This is so even though the Virginia statute also requires, in § (A)(4), some measure of "bolstering activities" to support the exercise of jurisdiction in respect of a claim arising from out-of-state acts causing in-state injury—a requirement that may exceed those imposed by the due process clause in respect of at least some out-of-state "single acts" causing tortious injury within the forum. *See, e.g., Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1172 (5th Cir.1985); *see*

*also Darden v. Heck's, Inc.,* 459 F.Supp. 727 (W.D.Va.1978) (recognizing that § (A)(4) imposes greater limitation on jurisdictional reach than does due process clause).

Picking up on the fact that the Virginia statute does impose this possibly extra-constitutional requirement of "bolstering activities" (soliciting business, etc.) to support jurisdiction in respect of out-of-state single acts causing injury within the forum, NABW erroneously con-

from conduct "purposefully directed" at plaintiffs in the forum state. The allegedly defamatory letters, though written in and mailed from Illinois and distributed throughout the country, were nevertheless directed in their intended effect at the activities in Virginia of Virginia residents. Plaintiff Leake lives and works in Virginia; First American, his corporate business, is incorporated in Virginia and its officers are residents there. All the operations, activities and services of First American are conducted in Virginia by Leake and other employees.

Accordingly, the NABW knew or should have known that its allegedly defamatory letters would inflict the greatest injury upon Leake in the state in which he resided and conducted his business. There can be no doubt that, for purposes of the jurisdictional inquiry, "the brunt of the harm, in terms both of [Leake's] emotional distress and the injury to [his] professional reputation was suffered in" Virginia. *Calder v. Jones*, 465 U.S. at 789–90, 104 S.Ct. at 1487–88 (specific jurisdiction constitutionally exercised over out-of-state defendants who researched, wrote and published allegedly defamatory article in foreign state where its effects were purposefully aimed at and suffered by plaintiff in forum state). Though the allegedly libelous letters were not directed only at the plaintiffs' actions in Virginia, there can be no doubt that the primary and most devastating effects of the letters would be felt in Virginia where Leake lives and his business is principally located. *Id.; see also Veribanc*, 755 F.2d 371 (exercise of specific jurisdiction over out-of-state corporate defendant in defamation action by forum-resident plaintiff upheld).

### IV

Our conclusion that specific jurisdiction may be exercised here constitutionally is buttressed by other considerations.

First, our conclusion accords with those of other courts that have upheld the constitutionality of state-authorized exercises of specific jurisdiction in a variety of situations involving claims of defamation by "single contact" letters or telephone calls by out-of-state defendants to persons in the forum state. *See Brown v. Flowers Industries*, 688 F.2d 328, 334 (5th Cir.1982) (allegedly defamatory telephone call from Indiana to forum state, Mississippi); *Froess v. Bulman*, 610 F.Supp. 332, 336–37 (D.R.I.1984), *aff'd without opinion* 767 F.2d 905 (1st Cir.1985) (allegedly libelous letter mailed by defendant in Maryland to plaintiff's employer in Rhode Island); *Rusack v. Harsha*, 470 F.Supp. 285 (M.D.Pa. 1978) (only contact the mailing of copies of an alleged defamatory letter from out-of-state to plaintiff's place of employment in forum state).

Secondly, the defendants' "ongoing interactions" with Virginia as found by the district court, though possibly not constitutionally required to support specific jurisdiction, *see supra* note 3, give added assurance of the fundamental fairness of its exercise here. For they insure that the specific act upon which the claims here are based was not a wholly fortuitous, random and singular contact by defendants with Virginia's territory and interests. *See Veribanc*, 755 F.2d at 374.

Finally, more general considerations underlying the fundamental principles support the conclusion that the exercise of jurisdiction in this case comports with " 'fair play and substantial justice.' " *Burger King*, 471 U.S. at 486, 105 S.Ct. at 2189, taking into account both forum, plaintiff, and defendant interests. Virginia has a strong interest in "providing effective means of redress for its residents," here an individual and a principally local business operation. *See McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78

tends that § (A)(4) is a "general jurisdiction" statute. Building upon this erroneous premise, NABW apparently contends that the level of "persistent conduct" required by § (A)(4) must reach the level of the "continuous and systematic" contacts amounting to "doing business" in the state required to support an exercise of general jurisdiction, i.e., in respect of a claim unrelated to the state. This is plainly wrong.

S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Moreover, the plaintiffs have an obvious interest in litigating in their home state. Finally, the burden placed upon the defendants in litigating in the "distant forum" of Virginia simply is not so great as to make unfair on that basis alone the exercise of jurisdiction. *See McGee*, 355 U.S. at 224, 78 S.Ct. at 201; *Burger King*, 471 U.S. at 484, 105 S.Ct. at 2188.

Whether the defendants' alternative motion to transfer under 28 U.S.C. § 1404(a) should be allowed was not addressed by the district court in view of its jurisdictional dismissal. The motion may of course be considered on remand. We express no opinion upon its merits.

### V

Because we conclude that an assertion of jurisdiction in Virginia over these defendants is authorized by the Virginia long-arm statute and comports with due process, we reverse and remand for further proceedings.

REVERSED AND REMANDED.