**COLE–TUVE, INC., Plaintiff,**

v.

**AMERICAN MACHINE TOOLS CORP., Defendant.**

**No. CIV. RDB 04–349.**

United States District Court,
D. Maryland,
Northern Division.

Oct. 26, 2004.

Donald J. Walsh, Scaldara and Potler LLP, Baltimore, MD, Donald C. Casey, Law Office of Donald C. Casey, Alexandria, VA, for Plaintiff.

## MEMORANDUM OPINION

BENNETT, District Judge.

Plaintiff, Cole–Tuve Inc., filed a Complaint against Defendant American Machine Tools Corp., (hereafter, "AMT") for violations of the Lanham Act, common law trademark infringement, and an intentional tort.[1] In response, AMT has made a special appearance to contest jurisdiction and venue and has requested that this Court (1) dismiss Cole–Tuve's Complaint for lack of personal jurisdiction in accordance with Federal Rule of Civil Procedure 12(b)(2), or in the alternative, (2) transfer the case to United States District Court for the Northern District of Illinois, (3) dismiss this action for improper venue pursuant to Rule 12(b)(3), or in the alternative (4) transfer this case to the United

---

1. Although the Plaintiff has not specified exactly the intentional tort under which it is proceeding, the Court finds that Plaintiff has adequately pled an intentional tort under the rules of general notice pleading as set forth in Rule 8 of the Federal Rules of Civil Procedure.

States District Court for the Northern District of Illinois, as provided for by 28 U.S.C. § 1404. No hearing is necessary. *See* Local Rule 105.6 (D.Md.2002). For the reasons that follow, AMT's motion will be DENIED.

## I. *Background*

Plaintiff Cole–Tuve, is a Maryland corporation that sells and rents machine tools with its principal place of business in White Marsh, Maryland. Cole–Tuve operates a website registered as *coletuve.com.* Defendant AMT is an Illinois corporation that sells and rents similar machine tools, and has its principal place of business in Chicago. Like Cole–Tuv, AMT runs a website, which is registered as *machinetooldistributor.com.* Both websites advertise the machine tools that the two companies sell, and the websites provide company contact and ordering information.[2]

Recently, AMT registered a second website name, *cole-tuve.com.* Any internet user who attempts to view *cole-tuve.com* is presented with an "error" page explaining that there are no files to view at this address. The error page also suggests that the user visit the main site of that name's registered owner, *machinetooldistributor.com.* (Pl.Compl.Ex. D.) As a result, a computer user who types *cole-tuve. com,* rather than *coletuve.com* will be directed to AMT, not Cole–Tuve. Cole–Tuve filed the instant action contending that this misdirection was intentional, and that the acts have harmed its business.

AMT has moved to dismiss or transfer the action based on lack of personal jurisdiction and improper venue. AMT, apparently ignoring Cole–Tuve's intentional tort allegations, maintains that "the sole allegation upon which the four counts in the complaint are based involve the allegation

that American Machine infringed on Cole–Tuve's trademark." (Def. Mot. to Dismiss at 1–2.) As a result, the majority of AMT's submission is devoted to disputing the presence or absence of the contacts necessary to sustain an exercise of general jurisdiction. AMT devotes approximately one page to a preemptive rebuttal of specific jurisdiction arguments, noting "The sole argument that Cole–Tuve, a Maryland corporation, may have been injured or damaged as a result of American Machine's actions, does not create the necessary factual predicate for specific jurisdiction to apply based on the *ESAB* case." (Def. Mot. to Dismiss at 6 (*citing ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617 (4th Cir.1997))). As a result, AMT maintains that questions of specific jurisdiction are not applicable in this case.

With respect to venue, AMT argues that all copyright actions must be brought in the district where the defendant is physically located, relying, for support, on its own reading of 28 U.S.C. § 1400(a). In the alternative, AMT maintains that the case must be dismissed or transferred based on the doctrine of *forum non conveniens.*

Cole–Tuve, in its reply, notes that its intentional tort allegations allow for an exercise of specific jurisdiction, that AMT's reading of the venue law is incorrect, and that the standard for a transfer under *forum non conveniens* has not been met.

## II. *Standard of Review*

 Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), a federal court's jurisdiction extends as far as the jurisdiction of a court in the state in which the district court is located. *See ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 622 (4th

---

**2.** It is unclear whether either or both companies actually sell through their websites, or merely use the websites as a kind of digital billboard, soliciting prospective purchasers.

Cir.1997). Thus, this Court may assert personal jurisdiction over a non-resident defendant only if (1) Maryland's long-arm statute[3] confers jurisdiction, and (2) the assertion of such jurisdiction is consistent with constitutional due process. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers*, 334 F.3d 390, 396 (4th Cir.2003).

■ The Maryland Court of Appeals has interpreted the Maryland long-arm statute to extend personal jurisdiction to the fullest extent permitted by the Due Process clause of the Fourteenth Amendment. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (4th Cir.1993) (citing *Curtis v. State*, 284 Md. 132, 150, 395 A.2d 464, 474 n. 7 (1978); Md.Code Ann., Cts. & Jud. Proc. § 6–101(e) (1989 & Supp.1992)); *Mohamed v. Michael*, 279 Md. 653, 658–59, 370 A.2d 551, 553 (1977). The statutory analysis therefore merges into the constitutional analysis, and the only question becomes whether the exercise of jurisdiction would violate due process. *Stover v. O'Connell Assocs.*, 84 F.3d 132, 135 (4th Cir.1996); *Choice Hotels Int'l, Inc. v. Madison Three, Inc.*, 23 F.Supp.2d 617, 619 (D.Md.1998).

■ Due process is satisfied if the defendant has such "minimum contacts" with Maryland that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316, 66 S.Ct. 154. Courts have recognized two types of personal jurisdiction, general jurisdiction and specific jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction arises where the defendant's contacts with the forum are "continuous, systematic, and

fairly extensive." *See id.* at 318. The facts of this case do not indicate such extensive contacts with the forum and there is therefore no such "general jurisdiction" in this case.

■ However, where extensive contacts are lacking, the Court may exercise specific jurisdiction if (1) the defendant purposely directed its activities toward residents of Maryland or purposely availed itself of the privilege of conducting activities in the state; (2) the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) the forum's exercise of personal jurisdiction in the case is reasonable, that is, consistent with "traditional notions of fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The defendant's activities must be purposefully directed at the forum state "in more than a random, fortuitous, or attenuated way." *Id.* However, its contacts with the forum need not be extensive, only seminal or related to the cause of action. *See McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *ESAB Group*, 126 F.3d at 625. Even a single contact may be sufficient to create jurisdiction when the cause of action arises out of that single contact, provided that principles of "fair play and substantial justice" are observed. *Burger King*, 471 U.S. at 477–78, 105 S.Ct. 2174.

Foreign defendants who intentionally harm residents of the forum state have been held to have intentionally interacted within the state. In *Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court created the so-called "effects-test," holding that jurisdiction was proper where foreign defendants researched, wrote and publish-

**3.** Md.Code Ann., Cts. & Jud. Proc. § 6–103 (2002).

ed an allegedly defamatory article intending to impact the plaintiff in the forum state. The U.S. Court of Appeals for the Fourth Circuit followed *Calder* closely in *First American First, Inc. v. National Association of Bank Women*, 802 F.2d 1511 (4th Cir.1986), holding that allegedly libelous letters, written in Illinois and distributed throughout the country, whose "primary and most devastating effects" were felt in Virginia, were sufficiently directed at Virginia to allow an exercise of specific jurisdiction there. *Id.* at 1517.

Since *First American*, however, the Fourth Circuit has seemed to require more than the *Calder* "effects-test" to hold exercises of jurisdiction over foreign tortfeasors constitutional. In *ESAB Group Inc. v. Centricut, Inc.*, the court held that a New Hampshire resident's collusion with a Florida resident to appropriate the customer lists and trade secrets of a South Carolina corporation, was not so intentionally directed at South Carolina as to warrant an exercise of specific jurisdiction. 126 F.3d 617, 625 (4th Cir.1997). Allowing an exercise of jurisdiction in the state where the plaintiff was injured, when the defendant maintained no other contacts with the state, the court reasoned, would decide the jurisdictional inquiry on "a plaintiff's decision about where to establish residence" rather than whether defendant's activities were "expressly aimed" at the forum. *Id.* at 626. After all, noted the court, a plaintiff always feels the impact of the harm in his or her home state. *Id.*

In the case of *ALS Scan, Inc. v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002), the Fourth Circuit addressed whether a "person electronically transmitting...information via the internet to Maryland, causing injury there, subjects the person to the jurisdiction of a court in Maryland." *Id.* at 712. The court held that a state may exercise jurisdiction over a person outside of its borders where that person "(1) directs electronic activity into the State, (2) with the manifest intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." *Id.* at 714.

In light of the above, the Court must decide whether Cole–Tuve's complaint has made the necessary prima facie showing that AMT's tortious impact in Maryland was intentional, not just a random, fortuitous, or attenuated result of activity that was not intentionally directed into the state.

## III. Analysis

### A. Direction of Electronic Activity into the State of Maryland

█ The first two prongs of the *ALS Scan* test are designed to elicit not only whether the complained-of conduct was intentional, but also whether that conduct's impact within the forum was intended. In *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir.2002), the Fourth Circuit refused to exercise jurisdiction over a Connecticut newspaper whose allegedly defamatory articles about a Virginia prison warden were posted on a website accessible to Virginia residents. The court reiterated and reinforced the applicability of the *ALS Scan* test, but noted that the "[defendant] must, through the Internet postings, manifest and intend to target and focus on [the forum state]...something more than posting and accessibility is needed ...." *Id.* That a plaintiff suffers harm from an intentional tort, while important, is not in and of itself sufficient to allow an exercise of jurisdiction by a court in the plaintiff's forum; constitutional protections demand "something more." *Id.*

The Fourth Circuit has not clarified exactly what constitutes the requisite "something more", but this Court finds U.S.

Court of Appeals for the Seventh Circuit's understanding useful in applying the Fourth Circuit's standards to facts presented by this case. In an Opinion by Judge Posner, the Seventh Circuit recognized:

"... in *Calder* as in all other cases...the defendant had done more than brought about an injury to an interest located in [the forum] state. The defendant had also entered the state in some fashion, as by the sale (in *Calder*) of the magazine containing the defamatory material."

*Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club*, 34 F.3d 410, 412 (7th Cir.1994). The "entry" described by Judge Posner is similar to the "something more" enumerated by the Fourth Circuit. In *First American*, the defendant "entered" the jurisdiction in almost the exact same fashion as the defendants in *Calder*, as she sent printed, defamatory material to the state for distribution there. *First American*, 802 F.2d at 1517. Accordingly, the court held that jurisdiction was proper. *Id.* Conversely, the court found no jurisdiction in *ESAB* and *New Haven*, where the defendant's impact in the state was more an ancillary result of activities primarily targeted elsewhere. *ESAB*, 126 F.3d at 625; *New Haven*, 315 F.3d at 262.

Based on these principles, to find jurisdiction in this case, this Court must be satisfied that there are sufficient allegations that the Defendant committed an intentional tort *and* that Defendant intended for that intentional tort to impact Plaintiff in Maryland. *See ALS Scan*, 293 F.3d 707; *ESAB*, 126 F.3d at 625; *New Haven*, 315 F.3d at 262. Cole–Tuve maintains that AMT intentionally registered a website similar to Cole–Tuve's so as to redirect Maryland customers away from a Maryland business and toward an Illinois business. According to the allegations, this website had no legitimate business purpose, other than to direct customers away from Cole–Tuve. Further, Cole–Tuve maintains that its only business (and hence, AMT's only possible target) is in Maryland. Accepting these allegations as true, AMT directed a harm at a Maryland business with the manifest intent of engaging in activities in the state by intentionally infringing on the rights of a company it knew to be in Maryland in order to misdirect its Maryland customers. Accordingly, Cole–Tuve has sufficiently satisfied the first two prongs of the *ALS Scan* test.

The final requirement of the *ALS Scan* test is simply that Plaintiff has stated a cause of action cognizable in the state courts. *ALS Scan*, 293 F.3d 707. As discussed above, Cole–Tuve has noted at least one claim for an intentional tort as a result of AMT's website name registration. This suit exists as a direct result of AMT's registration of an internet site name very similar to Cole–Tuve's. Construing the pleadings liberally, as this Court is required to do under Rule 8(f), Plaintiff has stated a claim that is cognizable as an intentional tort in the Maryland courts. As a result, Plaintiff has satisfied the final element of the *ALS Scan* test.

The satisfaction of the requirements of the *ALS Scan* test is clear to this Court on the facts alleged in this case. There would be no jurisdictional dispute if AMT had allegedly entered Maryland and installed misleading road signs to redirect customers bound for the local Cole–Tuve to a nearby branch of AMT. The registration of "cole-tuve.com" is a similar such alleged redirection. Cole–Tuve simply contends that this redirection was accomplished in cyberspace rather than along White Marsh Boulevard, where its offices are located. The allegation of a purposeful re-direction of Maryland customers seems most analogous to the paradigm of *Calder* and *First American*, as the tortfeasor was aware of

both the potential harm, and the likelihood that the harm would befall a Maryland resident. Whether the entry to the State was real or virtual should not matter; traditional notions of justice apply to both traditional and novel avenues of attack. In light of the contention of the Plaintiff that AMT directed its actions specifically at a Maryland company, AMT should not be allowed to use its distance to shield itself from the consequences of those actions.

Reading the pleadings in the light most advantageous to the non-moving party, Cole–Tuve has made a prima facie showing that AMT's website registration satisfies the jurisdictional test articulated by the Fourth Circuit in *ALS Scan.*

### B. *Venue*

 Defendant contends, in the alternative, that the case should be dismissed or transferred to the United States District Court for the Northern District of Illinois, its home district, as a result of improper venue selection. Defendant cites 28 U.S.C. § 1400(a), which dictates that actions for copyright infringement "may be instituted in the district in which the defendant or his agent may be found." This test has not been read, as Defendant asserts, to mean that actions in copyright must be brought in the Defendant's home state. Rather, it has been interpreted as coextensive with personal jurisdiction tests—where a defendant "may be found" is wherever a court may exercise personal jurisdiction over him. *E.g., Triple A Partnership v. MPL Communications, Inc.* 629 F.Supp. 1520, 1522 (D.Kan.1986); *Testa v. Janssen,* 482 F.Supp. 1195, 1197 (D.C.Pa., 1980). As this Court has determined that it is entitled to exercise personal jurisdiction over AMT, venue is proper under 28 U.S.C. § 1400, and dismissal unwarranted.

 In the alternative, AMT requests a transfer of the case. 28 U.S.C.A. 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party bears the burden of showing that transfer to the requested forum is proper. *Lynch v. Vanderhoef Builders,* 237 F.Supp.2d 615, 617 (D.Md.2002) (citing *Verosol B.V. v. Hunter Douglas, Inc.,* 806 F.Supp. 582, 592 (E.D.Va.1992)).

 The parties have not disputed that this action could have been brought in the United States District Court for the Northern District of Illinois. Therefore, the Court should consider the factors that bear on convenience, such as

(1) the plaintiff's choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

*Choice Hotels, Int'l, Inc. v. Madison Three, Inc.,* 23 F.Supp.2d 617, 622 n. 4 (D.Md.1998) (citing *Plant Genetic Sys., N.V. v. Ciba Seeds,* 933 F.Supp. 519, 527 (M.D.N.C.1996)); *see also Intranexus, Inc.*

*v. Siemens Med. Solutions Health Services Corp.,* 227 F.Supp.2d 581, 583 (E.D.Va.2002).

■ Generally, a plaintiff's choice of forum is given considerable weight unless none of the conduct complained of occurred in the forum and the forum has no connection with the matter in controversy. *Lynch,* 237 F.Supp.2d at 617. Here, the alleged conduct, to wit the Defendant's registration of a web address bearing significant similarities to the Plaintiff's trade name, affected the Plaintiff's business in Maryland and was intended to do so. The physical act of registration may have taken place outside of Maryland, but the alleged tortious conduct at issue here arguably occurred in the forum. The Fourth Circuit has noted that the state has a strong interest in " 'providing effective means of redress for its residents,' here a...[presumably] local business..." *First American,* 802 F.2d at 1517 (quoting *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). Accordingly, Cole–Tuve's choice of forum is due significant deference.

Defendant next contends that the location of the witnesses and parties weigh in its favor. According to AMT, all relevant witnesses reside in Illinois. However, the Defendant has neither identified the witnesses nor proffered the substance of the testimony of any of the witnesses nor submitted any affidavits explaining to the Court why and to what extent the witnesses will be inconvenienced if the case proceeds in this district. *See Helsel v. Tishman Realty & Constr. Co.,* 198 F.Supp.2d 710, 712 (D.Md.2002) (party seeking a change of venue is required to submit affidavits demonstrating inconvenience from the witnesses and parties involved). In fact, Defendant has not offered any evidence of inconvenience whatsoever. In contrast, Cole–Tuve has established that the Maryland-based entity would bear great expense if forced to prosecute its claim in Illinois. This expense is unjustified in light of the fact that Cole–Tuve's only connection with that forum results from the fact that the alleged tortfeasor happens to reside in Illinois.

Given the lack of any evidence supporting Defendant's claims, the weight accorded Plaintiff's forum selection, and the State's interest in providing its citizens effective redress for their harms, the Defendant has not sufficiently shown that the interests of convenience and justice require a change in venue.

### IV. *Conclusion*

For the reasons noted above, Defendant's Motion to Dismiss or Transfer for Lack of Personal Jurisdiction or Improper Venue, is DENIED. A separate Order will follow.

### *ORDER*

For the reasons stated in the foregoing Memorandum Opinion, it is this 26th day of October 2004, HEREBY ORDERED:

1. That Defendant's Motion to Dismiss or Transfer for Lack of Personal Jurisdiction or Improper Venue (Paper No. 7) is DENIED; and

2. That Defendant answer Plaintiff's Complaint within 20 days of this Order; and

3. That the Clerk of the Court transmit copies of this Order and the Memorandum Opinion to all counsel of record.